ROBERT H. McCURDY, HERMAN D. ALDRICH, and WILLIAM SPENCER, *v.* THOMAS J. AGNEW.

A partnership composed of A and B in New York, was dissolved in Jan., 1844. A first took the assets to settle the affairs of the firm. A became a member of a new partnership, of A, C and Co., and put into the said new firm $3600 of the goods of said late firm of A and B, and B took assets of said late firm to the amount of $1575. A met the engagements of said late firm as long as the settlement of their affairs remained in his hands. After a few months, it was agreed between A and B, that B should take the assets, and go on with the settlement of the affairs of the late firm of A and B. At or about the time of this change, two accommodation notes made by D, a brother of A, and endorsed by A, C and Co., were obtained, one dated April 1, and the other April 4, 1844, one at 4 and the other at 3 months, amounting, together, to $3200, for the purpose of raising money to meet engagements of said late firm of A and B. The money could not be raised on these notes; and afterwords, notes bearing the same dates, for the same amounts, and payable at the same times, made by A, C and Co., payable to and endorsed by A, were procured, to be used instead of the said first two notes, for the same purpose. A bond and mortgage from A to D was made on the 16th of April, 1844, without any consideration, either for the sole purpose of protecting D against his said endorsements or for the purpose of raising money on them as securities having no connection with the said endorsements; for which of these purposes the bond and mortgage were given was a matter in dispute between the parties. The two notes endorsed by D, and the bond and mortgage went into the hands of K, in New York, for the pur-

pose of having money raised on them, to be applied to the payment of debts of said late firm of A and B. The bond and mortgage were assigned by D to K, without any consideration therefor, for the more convenient transferring them to any lender of money on them, D not residing in New York. Money was advanced by K, or raised by him on the said two notes endorsed by D. No money was raised on the bond and mortgage as separate securities disconnected with the notes endorsed by D. After the dissolution of the partnership of A and B, B went into partnership with O, under the name of B and Co., and this firm became indebted to the complainants for goods sold by the complainants to them, for which they gave their notes to the complainants. The notes of A, C and Co., endorsed by D, were paid, half by B, and the other half by A. On the 24th of Sept., 1844, the bond and mortgage were assigned by K, without any consideration, to the complainants, by the direction of B, as collateral security for the payment of said notes given by B and Co. to the complainants, and the complainants claim to hold them as securities for goods sold by them to B and Co. before and after the assignment of the bond and mortgage to them. The complainants made no inquiry, either of the mortgagor or mortgagee, to ascertain for what purpose they were given, or whether there was any money due on them, or whether B had any right to direct the assignment of them, and before they took the assignment, received from K such information as apprised them that when K made the assignment to them he had no right existing in him to do it.

*Held,* That if the bond and mortgage were given for the specific purpose of protecting D against his said endorsements, (which the Court thought to be the weight of the evidence,) then, after those notes were paid, the purpose for which the bond and mortgage were given was accomplished, and K had no right to assign them, and B to direct the assigment of them, and that the complainants acquired no interest in them.

*Held, further,* That if the bond and mortgage were made and assigned to K for the purpose of enabling him to raise money thereon for the purposes of said late firm of A and B, K had no right, under the facts in evidence, to assign them to the complainants, and B had no right to direct the assignment of them by K to the complainants as collateral security for the notes of B and Co., given for goods bought by them of the complainants.

The bill was filed on the 12th day of September, 1845, by Robert H. McCurdy, and Herman D. Aldrich, of the city of New York, and William Spencer, of the city of Brooklyn, in the State of New York; and states that, on or about the sixteenth day of April, 1844, Thomas J. Agnew, of the city of New York, was seized, or pretended to be seized in fee of the lands and premises in the bill mentioned.

That on the said sixteenth day of April, 1844, the said Thomas J. Agnew did execute and deliver to one Andrew Agnew, a certain bond or obligation in writing under his hand and seal, whereby he the said Thomas J. Agnew became bound unto the said Andrew Agnew in the penal sum of eight thousand dol-

lars well and truly to be paid to the said Andrew Agnew, his certain, &c., which bond was conditioned for the payment of $4000, with interest at six per cent., on or before May 1, 1845.

That the said Thomas J. Agnew, in order to secure the payment of the said sum of money, with the interest thereon in manner aforesaid, in and by a certain indenture of mortgage, bearing even date with the said bond, under his hand and seal duly made and executed, and for and in consideration of the further sum of five shillings, the receipt whereof he did thereby acknowledge, did grant, bargain, sell, &c., unto the said Andrew Agnew, his heirs and assigns, all that certain lot of land being No. 7, situated, lying and being in the township of North Brunswick, in the county of Middlesex, on the southwest side of the new road to Cool Spring; (describing the premises); which mortgage contained a proviso that the same should be void on the payment of the said sum of $4000, with interest, according to the condition of the said bond.

That on the 16th of April, 1844, the execution of the said indenture of mortgage was duly acknowledged by the said Thomas J. Agnew, before William H. Maxwell, one of the Commissioners, &c., then residing in the city of New York.

And that the said mortgage was on the same day duly registered in the Clerk's office of the county of Middlesex.

That afterwards, to wit, on the twenty-third day of April, 1844, and while the said sum of money was still due and unpaid, the said Andrew Agnew, for and in consideration of the sum of four thousand dollars to him in hand paid by Elijah H. Kimball, of the city of New York aforesaid, by a certain writing of assignment under his hand and seal, did assign, transfer and set over unto the said Elijah H. Kimball the said bond and indenture of mortgage, and all the money due and to grow due thereon, and also all the estate, right and interest in and to the lands and premises therein and thereby granted and conveyed, to have and to hold the same to the said Elijah H. Kimball, his heirs and assigns forever, subject only to the proviso in the said indenture of mortgage mentioned.

That afterwards, to wit, on the 24th day of September, 1844, and while the said sum of four thousand dollars still remained

due and unpaid, the said Elijah H. Kimball, for a valuable consideration to him in hand paid by the complainants, by a certain writing of assignment under his hand and seal, did assign, transfer and set over unto the complainants the said bond and indenture of mortgage, and all the money due and to grow due thereon; and, also, all the estate, right and interest in and to the lands and premises therein and thereby gtanted and conveyed, to have and to hold the same to the complainants, their heirs and assigns forever, subject only to the proviso in the said indenture of mortgage mentioned.

That the whole of said principal sum, with a large amount of interest, is still due on the said bond and indenture of mortgage.

That the said mortgaged premises have always been, since the date of the said indenture of mortgage, in the possession of the said Thomas J. Agnew, or in the possession of some one holding or claiming under him, and that the said Thomas J. Agnew has at all times received, and still does receive, the rents, issues and profits thereof, to the entire exclusion of the complainants.

The bill prays foreclosure; and a sale of the premises.

On the 17th of December, 1846, the defendant filed and propounded to the complainants the following interrogatories:

*First Interrogatory.* Were you, or either of you, and which, on the first day of April, 1844, personally acquainted with Thomas J. Agnew, John Orville Taylor, or Andrew Agnew, or either of them, and if so, for how long?

2d. State whether prior to the said first day of April, 1844, you, as the firm of McCurdy, Aldrich & Spencer, had any dealings with the late firm of Agnew & Taylor, of the city of New York, and if so, its general nature and amount, as to goods sold, money lent, bills or notes accepted, endorsed or discounted?

3d. State whether since the first day of April, 1844, you have had any business transactions with the said late firm of Agnew & Taylor, and if so, the general nature and amount thereof?

4th. State as near as you can the amount, if any, in which the said late firm of Agnew & Taylor were indebted to you on the first day of April, 1844, and whether the same was due or owing on account, bill, note, or other negotiable paper, or is still due and owing, or how much thereof?

5th. State whether you ever inquired of Thomas J. Agnew, or Andrew Agnew, as to the validity of the bond and mortgage mentioned in the complainants' bill, or of the amount due thereon, and if so, when and where?

6th. State what consideration, in money or otherwise, you gave or paid Elijah H. Kimball, of New York, for the assignment of the bond and mortgage in the complainants' bill mentioned to you, and whether all or any part, and what part of the said consideration, (if any,) remains unpaid or unsettled, and whether any other and what security is held therefor?

7th. State whether or no, you have at any time sold, bargained, or delivered to the said John O. Taylor, or to the late firm of J. O. Taylor & Co., (of which the said John O. Taylor was a partner,) any goods, wares or merchandise, or advanced money? and if so, whether the bond and mortgage in the complainants' bill mentioned was, directly or indirectly, assigned, transferred or pledged as payment, or as collateral security for the same? or if any notes, bills or drafts given therefor, or is in any way connected with, or held as payment, or part payment, or security, or satisfaction therefor? and if so, the amount and particulars thereof, and how much is now unpaid? and whether any other security, and what, is held therefor? State at large.

On the 17th of December, 1846, the complainants filed the following answers to the interrogatories :

The answers, joint and several, of the complainants to the interrogatories exhibited and submitted to them, by and on the part of the defendant.

In answering the first interrogatory, exhibited and submitted

to them, by and on the part of the said defendant, these complainants say that the complainant Robert H. McCurdy was personally acquainted with Thomas J. Agnew, and John Orville Taylor on the first day of April, in the year 1844, and had then known them about one year, but was not acquainted with Andrew Agnew. And that the complainants Herman D. Aldrich and William Spencer were on the said first day of April personally acquainted with John Orville Taylor, and had known him then about three months, but was not either of them acquainted with either Thomas J. Agnew or Andrew Agnew.

In answering the second interrogatory, these complainants say, that they, in the name and style of McCurdy, Aldrich & Spencer, and as such firm, prior to the first day of April, 1844, sold and delivered to the said firm of Agnew & Taylor divers bills of merchandise, amounting in the whole to the sum of $2,002.31, for which bills and amount the notes of the said firm of Agnew & Taylor were given; that these complainants had not prior to the said first of April had any other dealings or transactions with the said Agnew & Taylor, either as a firm or as individuals.

In answering the third interrogatory, these complainants say, that since the first day of April, 1844, to wit, on the twenty-fifth day of April aforesaid, they discounted the note of Agnew & Taylor, at their request, for the sum of $195.13, payable six months after said date, and that they have had no other business transactions with the said firm of Agnew & Taylor since the said first day of April, 1844.

In answering the fourth interrogatory, these complainants say, that on the first day of April, 1844, the said firm of Agnew & Taylor were indebted to these complainants in the sum of $1165.79 on their two prommissory notes, the one for $378.55, payable on the twenty-fifth of April, 1844; and the other for $787.24, payable on the eighteenth day of May, 1844, both of which have been paid.

In answering the fifth interrogatory, the complainants Herman D. Aldrich and William Spencer say, that neither of them ever inquired of either Thomas J. Agnew or Andrew Agnew as to the validity of the said bond and mortgage mentioned in the said

bill of complaint, or as to the amount due thereon; and the said complainant Robert H. McCurdy says that he thinks he never made of either of them such inquiry.

In answering the sixth interrogatory, the complainants say, that they never paid to Elijah H. Kimball, of New York, any consideration for the assignment to them of the said bond and mortgage.

In answering the seventh interrogatory, the complainants say, that from the thirtieth day of January, 1844, to the twenty-second day of May, 1844, they sold to John Orville Taylor goods and merchandise to the amount of $3,234.38; all of which amount has been paid; and that they sold and delivered, at divers times, between the twentieth day of July, 1844, and the seventh day of December, 1844, to J. O. Taylor & Co., 'on credit, goods and merchandise to the amount of $7,974.57, for which last mentioned goods and merchandise the said J. O. Taylor & Co. gave their notes, and for the payment of which last mentioned notes the said J. O. Taylor & Co., or the said John O. Taylor in behalf of the said J. O. Taylor & Co., gave to these complainants as collateral security, before the delivery of the said goods and merchandise, and without which security said goods and merchandise would not have been delivered, different notes of hand given by other persons, and the bond and mortgage in question mentioned in the said bill of complaint; and they further say, that the said John Orville Taylor, at the time of offering to give to these complainants the said bond and mortgage, as collateral security, represented and said to them that the said bond and mortgage, which was then in the hands of the said Elijah H. Kimball, belonged to and was the property of him the said John O. Taylor; that the said bond and mortgage had been given by the said Thomas J. Agnew, (the defendant,) indirectly to him the said John Orville Taylor, to enable him the said John Orville Taylor to pay off and satisfy certain debts due from the then late firm of Agnew and Taylor, of which said last mentioned firm the said Thomas J. Agnew and the said John Orville Taylor were the only partners. And that the said John Orville Taylor further represented and said, that he had used the said bond and mortgage, and caused them to be transferred to the

said Elijah H. Kimball, as security for money which he the said Kimball had advanced thereon to him the said Taylor, and which money, so raised, he the said John Orville Taylor had used to pay the aforesaid debts of the said firm of Agnew and Taylor. And the said John Orville Taylor further represented and said to these complainants, that he had repaid to the said Elijah H. Kimball the said money advanced as aforesaid to him by the said Kimball; and that he the said Kimball would, at the request of the said John Orville Taylor, assign and transfer the said bond and mortgage to them the said complainants, as security for the payment of such goods and merchandise as the said complainants would sell and deliver to the said J. O. Taylor & Co. And they further say, that they the complainants accepted the said offer of the said John Orville Taylor, and at the request of the said John Orville Taylor, the said Elijah H. Kimball assigned and transfered the said bond and mortgage to these complainants, as security as aforesaid; and these complainants, in consequence, sold and delivered to the said J. O. Taylor & Co. the goods and merchandise last mentioned, amounting in the whole to the sum of $7,974.57, as aforesaid. And these complainants further answer and say, that the sum of $5,140 still remains due and owing to them from the said J. O. Taylor & Co., on account of the goods and merchandise sold by them as last aforesaid to the said J. O. Taylor & Co. And that they still hold the said bond and mortgage as security for the payment of the said last mentioned sum, in connection with three prommissory notes, viz: one of Henry Bacon, for $115.65 cents, due February eighteenth, 1845, one of William H. Mills, for $490.11, due May eleventh, 1845, and one of E. P. Forsyths, for $279.85, due May twenty-fourth, 1845. And which said notes the complainants consider of little or no value, but which said notes and the said bond and mortgage are all the security which the complainants hold or have for the payment of the said sum of $5,140 aforesaid.

*State of New Jersey, ss :* Robert H. McCurdy, Herman D. Aldrich and William Spencer, the foregoing complainants, being severally duly sworn, on their respective oaths say, that the fore- .

going answers made to interrogatories exhibited and submitted to them by and on the part of the above defendant, so far as they relate to matters and acts on their part as a firm, and so far as they relate to matters and things alleged to be or purporting to be within the knowledge of these complainants, or either of them, are true. And so far as they relate to matters and things which they have learned from others, they believe them to be true.

On the 17th of December, 1846, the defendant filed his answer to the bill.

He admits that he did make, execute and deliver to Andrew Agnew, in said bill mentioned, a bond or obligation and indenture of mortgage, of such date and such purport as in the said bill is set forth; and that at the date and delivery thereof, this defendant was seized in fee simple of the lands and premises in the said indenture of mortgage and bill particularly described, and that the said indenture of mortgage was duly acknowledged by this defendant, and registered in the clerk's office of the county of Middlesex, at the time and in the manner set forth in the said bill of the complainants; and that the said Andrew Agnew, by an assignment under his hand and seal, of the date and purport in said bill set forth, did assign and transfer and set over to the said Elijah H. Kimball, in said bill mentioned, and his assigns, the aforesaid indenture of mortgage and bond; and that, as this defendant hath lately been informed and believes, the said Elijah H. Kimball, by an assignment under his hand and seal, of the date set forth in said bill, and for the nominal consideration of one dollar, did assign, transfer and set over unto the said complainants the aforesaid bond and indenture of mortgage, and all the money due and to grow due thereon, and all the estate, right and interest of the said Elijah H. Kimball in and to the lands and premises in said indenture of mortgage described. And he admits that, at the date of the said mortgage, this defendant was, and still is in the possession of the lands and premises therein described, and in the receipt of the rents, issues and profits thereof: But this defendant expressly

denies, that at the date of the above mentioned assignment of the said bond and mortgage, by the said Elijah H. Kimball to the said complainants, there was due or owing upon the same to the said Elijah H. Kimball the sum of $4000, mentioned in the condition of the said bond and indenture of mortgage, with the interest thereon, or any other sum of money whatever, or that there is now due or owing, or was at the filing of the complainants' bill, to the said complainants on the said bond and mortgage, the aforesaid sum of $4000, with interest thereon, or any other sum whatever, but that the full and true consideration of the said bond and indenture of mortgage had before then been fully paid and satisfied, in manner and as hereinafter set forth, and that the said bond and mortgage ought in equity to be delivered up by the said complainants to the defendant to be cancelled, and that the same are now held and kept on foot by the said complainants through fraud and covin, against equity, and to the great detriment and injury of the defendant.

He says that the said bond and moatgage were made and given by the defendant to the said Andrew Agnew, as collateral security to him for the making by him, at the request and for the accommodation of the defendant, of two prommissory notes, amounting together to the sum of $3200, and of the same date and amount, respectively, as the notes hereinafter mentioned and set forth, and payable to the order of the late firm of Agnew, Abbott & Co., of the city of New York, of which said firm the defendant was then a partner, and by means of which said prommissory notes, endorsed by the said firm, this defendant was desirous of raising the said sum of $3200; that, this defendant finding it inconvenient or impracticable to negotiate the said notes, the same were thereupon retained by the said firm of Agnew, Abbott & Co., as security to them for two other prommissory notes, then drawn by the said firm of Agnew, Abbott & Co., at the request of this defendant, and for his accommodation, payable to the order of the said Andrew Agnew, the one dated New York, April first, 1844, at four months, for $1,640, the other dated New York, April 4th, 1844, at three months, for $1,560, and which said last mentioned prommissory notes, at the request of the said defendant, were endorsed to and discounted or cashed

by the said Elijah H. Kimball, and as collateral security to the said Elijah H. Kimball for the payment of the said last mentioned notes, the said bond and mortgage, at the request of this defendant, were assigned and transferred by the said Andrew Agnew to the said Elijah H. Kimball, and were by him so held and received, and for no other purpose or consideration whatever; and this defendant denies that at the making of the said bond and mortgage, or the delivery thereof, this defendant was indebted to the said Andrew Agnew in the sum of $4,000, or any other sum, or that the said bond and mortgage were given by this defendant to the said Andrew Agnew for any monies then actually advanced to this defendant, or owing by this defendant to the said Andrew Agnew, or for any other purpose or consideration other than as above stated and set forth.

And this defendant, in further answering, says, that before the above mentioned assignment by the said Elijah H. Kimball to the said complainants of the said bond and mortgage, the said last mentioned prommissory notes were taken up and paid by this defendant at the maturity thereof, or within a few days thereafter, and the said first mentioned prommissory notes of the said Andrew Agnew returned to him by the said firm of Agnew, Abbott & Co., and that thereby the said bond and mortgage became fully discharged and satisfied, and without consideration and inoperative against this defendant; the said Elijah H. Kimball having no other interest or control therein than to hold the same for this defendant, or re-transfer and deliver the same to said Andrew Agnew; and that this defendant always in fact believed and supposed, that the same had in fact been re-delivered to the said Andrew Agnew, until otherwise informed shortly before the filing of the bill in this cause; and this defendant, in in further answering says, that he is informed and believes that the said complainants gave or paid no money, or other value or consideration, for the assignment of the said bond and mortgage by the said Elijah H. Kimball; and that the said assignment was procured and devised by the said complainants fraudulently, without the knowledge or consent of this defendant, or of the said Andrew Agnew, and with full knowledge that the said bond and mortgage were held by the said Elijah H. Kimball as col-

lateral security only for the payment of the above mentioned notes, and that the consideration thereof had been fully paid off and discharged; and this defendant, in further answering, denies that the said complainants, or either of them, ever applied to this defendant for the payment of the said bond and mortgage, or made any other application to this defendant in relation thereto, before the filing of their bill in this cause.

The common replication was filed.

The common rule to close testimony was filed by the complainants on the 30th March, 1847.

The following depositions were taken on the part of the complainants:

*John Orville Taylor*, of the county of Saratoga, in the State of New York, a witness produced on the part of the aforesaid complainants, being duly sworn, deposeth and saith: (exception being first taken to the examination of the said John Orville Taylor, by the solicitor of the defendant, on the ground of interest, whereupon the complainants executed and delivered to the said John O. Taylor a release, which release is marked *Exhibit A*, on the part of the complainants; whereupon the solicitor of the defendant, further objected to the examination of the said John O. Taylor, as still being an interested witness,) that he resides in Saratoga county, in the State of New York; that in April, 1844, witness resided in the city of New York; witness is acquainted with the parties in this suit; was acquainted with them in April aforesaid; prior to that time witness had been in partnership with the defendant, Thomas J. Agnew; they did business under the name and firm of Agnew & Taylor. The firm of Agnew and Taylor was dissolved in January, 1844. Witnesss has seen before, the bond marked *Exhibit B*, and the mortgage marked *Exhibit C*. Witness knows how, and for what purposes the said bond and mortgage were given. (Answer excepted to.) Upon the dissolution of the firm of Agnew & Taylor, that firm was in debt to the amount of about thirty

thousand dollars. At the dissolution of the said firm, the settlement of the affairs of the said firm first devolved upon Thomas J. Agnew. The affairs of the said firm remained in the hands of the said Thomas J. Agnew from January till April, 1844; and in April, 1844, aforesaid, the assets of the said firm which remained came into the hands of witness for settlement, as far as they would go. They came into witness's hands on account of a supposed inability on the part of Thomas J. Agnew to bring the affairs of the firm to a close, and because of Thomas J. Agnew's misapplication of the assets. It is impossible for witness to say what amount of the assets were misapplied, but supposes about $4,000 worth. At the time the assets came into the hands of witness, there were various suppositions as to the amount of them, but what the exact value was it is impossible for witness to tell; but at the time, they were supposed to be worth some $7,000 or $8,000 less than the indebtedness of the firm. To pay this deficiency, witness proposed that the remaining assets should come into his, witness's hands, and that Thomas J. Agnew should give to witness a mortgage of $4,000 upon his property in New Brunswick, mentioned in *Exhibit C,* to aid in settling them. This proposition was made in accordance with the express wishes of Thomas J. Agnew. The bond and mortgage marked *Exhibits B,* and *C,* were made and executed in pursuance of such arrangement. The bond and mortgage in question were made payable to Andrew Agnew at Thomas J. Agnew's request, that it might not have the appearance of its being done out of the family. Andrew Agnew and Tomas J. Agnew agreeing at the time to assign them to Elijah H. Kimball of the city of New York, to enable witness to raise money on them; the assignment having been made to him, at his wish, he being the better able to negotiate it in that form. After the bond, mortgage and assignment were executed, they were given to witness, and by him given to Elijah H. Kimball, for the purpose of raising money as aforesaid. The bond and mortgage remained in the hands of Mr. Kimball until the following September, he not being able to raise money on them, although making efforts during that time. Mr. Kimball did not raise the money on them during that time. Mr. Kimball, in September, 1844, agreed, at

the request of witness, to assign the bond and mortgage to the complainants. Witness, at the time of making said assignment, having agreed with the complainants to give to them this bond and mortgage as collateral security for the payment of purchases of dry goods made, and to be made, by witness of them. Whereupon the assignment was made by Mr. Kimball to the complainants. Witness's indebtednes to complainants for purchases made of them, and for the payment of which they held the bond and mortgage as collateral security, amounted at one time to about $9,000. Of that indebtedness, witness owed to complainants, until released to-day, about $5,000. With the proceeds of the goods obtained by pledging the bond and mortgage, and other property belonging to witness, witness paid of the indebtedness of Agnew & Taylor $9,321, in addition to what witness paid from the assets of Agnew & Taylor. In the arrangement between witness and Thomas J. Agnew, when witness took the assets, he was to furnish, and did furnish, in addition to the assets and the bond and mortgage, $1,575. Witness agreeing to pay the indebtedness of the firm of Agnew & Taylor, as far as the assets, bond, mortgage, and the said $1,575 would go, and no farther. Witness was not to be personally liable to Thomas J. Agnew. Beyond the matters and things put into witness's hands to pay the debts of Agnew & Taylor as aforesaid, he paid of the said indebtedness, out of his own funds, the sum of $5,321. At the time when Agnew & Taylor went into business together, Thomas J. Agnew verbally pledged this same property as a part of his capital in the said firm of Agnew and Taylor; and agreed to raise money upon it, whenever it should be required. Thomas J. Agnew frequently represented to the creditors of the firm of Agnew & Taylor that he, Thomas J. Agnew, owned this property. At the time wittness pledged the bond and mortgage to the complainants, and obtained the goods from them, he informed them that the transaction was honest, fair and right; and that he was really the owner of the bond and mortgage in question; and the complainants never had any reason, so far as the witness knows, to think otherwise; the only purpose for which this bond and mortgage were given was to enable witness to pay the debts of Agnew & Taylor; and had nothing to do

with securing the payment of any notes on which was the name of Andrew Agnew, either as drawer or endorser.

*Being cross-examined*—Witness says that he and Thomas J. Agnew are on friendly but not intimate terms; that there has been some correspondence between them; and he has visited witness where he now resides; witness is now working on a farm; he left mercantile business in May, 1845; complainants held the notes of witness for his indebtedness, spoken of in this examination.

These notes were drawn by J. O. Taylor & Co.; this firm was composed of J. O. Taylor and Charles Olcott; this firm was formed in May, 1844, and was dissolved in the following February; this firm owed other debts, which are still unpaid, in addition to those to the complainants. It was about two or three months after the dissolution of the firm of Agnew & Taylor before Thomas J. Agnew went into business again, in the firm of Agnew, Abbott & Co. The debts of Agnew & Taylor were mostly paid during the months of April, May and June, 1844, at the time they fell due. No final settlement has ever been made, or balance struck, between witness and Thomas J. Agnew, as to the affairs of Agnew & Taylor. Subsequent to the time witness took charge of the assets of Agnew & Taylor, there has been no settlement of any kind between him and Thomas J. Agnew of the affairs of Agnew & Taylor. At the time of the assignment of the bond and mortgage by Mr. Kimball to the complainants, the debts of Agnew & Taylor were not all paid. At the time the assignment was made, witness cannot say that complainants were aware of the purpose for which the bond and mortgage were originally given; he does not remember whether he did inform them or not; he never raised any money on that bond and mortgage, to pay the debts of Agnew & Taylor, except by the sale of goods, as hereinbefore stated, by the firm of J. O. Taylor & Co. There are worthless assets, consisting of bills receivable, and open book accounts not yet collected, belonging to the firm of Agnew & Taylor. At the time the assets came into the hands of witness, there was no inventory of the

debts or assets, but there was a written agreement specifying the terms on which witness was to settle the affairs of Agnew & Taylor. There were no articles of co-partnership drawn up at the time of the formation of the firm of Agnew & Taylor. Thomas J. Agnew and Andrew Agnew were not consulted in the assignment of the bond and mortgage made by Elijah H. Kimaall to the complainants. They never agreed nor disagreed to it, that the witness knows of; witness informed Thomas J. Agnew of the transfer of the bond and mortgage, within two or three months after it was made; but does not recollect that he informed Andrew Agnew of it. The firm of J. O. Taylor & Co. is insolvent.

*Being examined in chief*—Witness does not know what has become of the original agreement in writing between Thomas J. Agnew and him, made when the assets came into witness's hands.

Is the paper marked.*Exhicit D.* a true copy of that agreement, to the best of your recollection and belief? Witness answers that it is.

The two notes mentioned in said agreement as liabilities of Agnew & Taylor were paid off and taken up, the one-half by the firm of J. O. Taylor & Co. and the other half by the firm of Agnew, Abbot & Co. (Excepted to.) At the time when witness informed Thomas J. Agnew of the assignment of the bond and mortgage by Mr. Kimball to the complainants, he, the said Thomas, made no objections whatever to it. Witness is brother-in-law of Thomas J. Agnew and Andrew Agnew. One of the notes mentioned in the written agreement had been discounted, and Thomas J. Agnew had received the money on it, before the assets came into the hands of witness. What Thomas J. Agnew did with the proceeds of the note, witness does not know.

*Elijah H. Kimball*, a witness also produced on the part of the complainants, being duly sworn, deposeth and saith, that soon after the dissolution of the co-partnership of Agnew & Taylor, Taylor commenced business on his own account, and in his own name, and Agnew formed a co-partnership with Abbot & Wil-

comb, under the name of Agnew, Abbot & Co.   At the dissolution of the co-partnership of Agnew & Taylor, Agnew took the goods on hand, with the assets, with the exception of some $1,500 or $1,600 which Taylor received; Agnew agreeing to pay all the debts of Agnew & Taylor, and to indemnify Taylor against them.

In the following spring, after the dissolution of Agnew & Taylor, Mr. Agnew found himself unable to pay the debts of the concern of Agnew & Taylor as they matured.   Both parties, Agnew and Taylor, called on deponent for the purpose of drawing an agreement; previous to this, however, the parties called on deponent and stated their difficulty about payment of the debts, and requested deponent's aid, and stated the circumstances in which they were placed.   They informed deponent that if they could raise money temporarily, they could in a short time procure a bond and mortgage which would enable them to go through.   Deponent said he would do all in his power to assist them.   And during the first week in April, Mr. Agnew brought deponent a note of Agnew, Abbott & Co., upon which deponent paid him $1,500.   Another note was afterwards brought to deponent, of Agnew, Abbott & Co., by one of them, either Agnew or Taylor.   It was understood that the proceeds of these notes should be applied to the payment of the debts of Agnew & Taylor.   The amount of these two notes was about $3,200.   Soon afterwards Agnew and Taylor called on deponent, and entered on a negotiation, and made an agreement, of which *Exhibit D.* deponent believes to be an exact copy.

At the time of making this agreement, the former agreement, made at the time of the dissolution of the co-partnership of Agnew & Taylor, was produced and cancelled.   At the time of the execution of the agreement marked *Exhibit D.*, Thomas J. Agnew stated that he could give or procure a mortgage of $4,000, upon which money could be raised, if Taylor would undertake to raise the money on it, and pay the debts.   Taylor agreed to take the mortgage, and to pay the amount of the mortgage on the debts of Agnew & Taylor, considering the mortgage as cash. Mr. Taylor applied to deponent to see if deponent could get the mortgage cashed for him.   Deponent said he would do the best

he could. At the interview, when deponent informed Mr. Taylor that he would try to raise the money on the mortgage, he advised Taylor to procure an assignment of it to witness. Shortly after, an assignment was procured, which was set forth in the pleadings in this cause, to witness, of the said bond and mortgage, Mr. Taylor brought and delivered the said bond and mortgage with the assignment.

After the bond and mortgage was in witness's hands, witness endorsed for Taylor and loaned money to him from time to time upon the faith of this bond and mortgage, and other collateral securities. But although witness made efforts to do so, he was unable to make from any other person a direct loan or a sale of the said bond and mortgage. Mr. Taylor made subsequently several applications to witness to assign the bond and mortgage to the complainants, which he declined to do until all the notes upon which witness was endorser were paid and the money loaned was paid. As soon as the money referred to and the money loaned were paid, witness then, at the request and by the direction of J. O. Taylor, assigned the said bond and mortgage to the complainants.

At the time this agreement was made to give the bond and mortgage in question, there was nothing said about the bond and mortgage being given to secure Andrew Agnew against the payment of any note or notes on which his name was either drawer or endorser, to witness's recollection. About the time the notes in question fell due, Taylor gave notice to Agnew, or Agnew, Abbott & Co., that he should not pay these notes as they matured. And contended that Agnew was bound to pay them, inasmuch as he (Taylor) had paid out an amount in liquidating the debts of Agnew & Taylor, much larger than the amount he had received from the assets of Agnew & Taylor, and the bond and mortgage, and the $1,575 which he was to pay. The parties finally agreed that each should pay one-half of the two notes, and it was done accordingly.

Adjourned, by consent of parties, to Friday, the 19th of March, 1847, at 10 o'clock in the forenoon.

At the conclusion of the direct examination of Mr. Kimball,

the counsel for the defendant excepted to the whole of it, which I omitted to note in its place.

SAMUEL CASSEDY,

*Master in Chancery.*

Friday, 19th March, 1847, at 10 o'clock in the forenoon, at the same place, the parties met pursuant to the said adjournment. Present, John Van Dyke, of counsel for the complainants, and Robert Adrain, of counsel for the defendant Thomas J. Agnew.

*Elijah H. Kimball,* a witness on the part of the complainant, being further examined, saith—That *Exhibit F.* on the part of the complainant is the instrument by which deponent assigned the bond and mortgage in question to the complainants. Deponent says that he believes he advanced money on the two notes heretofore named before the said bond and mortgage were assigned to him, and before the date of the said bond and mortgage.

*Deponent being cross-examined,* on the part of the defendant, further saith, that he is an attorney and counsellor at law, in the city of New York, and that his office is 53 Wall street, New York. Deponent has not now, and never had any professional engagements with the complainants. Deponent, on being shown *Exhibit E.,* on the part of the complainant, says he did not, at or before the said assignment of the said bond and mortgage to him, pay to Andrew Agnew, the maker of said assignment, the sum of $4,000, or any part thereof. Deponent never at any other time advanced the said sum of money, or any part thereof, to Andrew Agnew or to Thomas J. Agnew. Deponent did not pay J. Orville Taylor, or to any other person, the consideration money mentioned in the said assignment to him, this deponent. Deponent did not receive any consideration from the complainants for his assignment of the said bond and mortgage to them. Deponent says *Exhibit E.* was delivered to him, he thinks about the time it bears date. Deponent can say nothing about *Exhibit F.* as to the time it was delivered, otherwise than from its date. Deponent says that, the said bond and mortgage were placed in

my hands and assigned to me for the purposes of raising money upon them, and, in case of a sale of the mortgage, that deponent might the more readily and conveniently pass it to the purchaser, Mr. Andrew Agnew residing out of town.

Deponent never sold the mortgage, except transferring it at the request of Mr. Taylor. Deponent was asked by defendant's counsel, whether the sale of the bond and mortgage was one of the purposes for which they were placed in his hand. He answers, he was requested by the person who left the bond and mortgage with him to sell them if possible, or otherwise raise money upon them. Deponent never advanced the $4,000, the consideration money therein mentioned. Deponent did advance to Mr. Taylor, from time to time, sums of money, and endorsed for him, whilst deponent held the said bond and mortgage in his hands, upon the faith of other securities, and the said bond and mortgage; and deponent declined to give up that bond and mortgage to Mr. Taylor, or to assign it to the complainants, although often requested so to do by Mr. Taylor, until he, (deponent,) was relieved from all his liabilities for him, (said Taylor,) and his liabilities to deponent, except an account unpaid deponent for his professional services for Mr. Taylor. Deponent thinks Mr. Taylor, when applying to deponent from time to time, spoke of the bond and mortgage as a security in deponent's hands, which would make him secure in any event. Deponent does not recollect that he made any agreement, when the bond and mortgage were placed in his hands, to make any advances of money on them, or to endorse for Taylor on the faith of said securities. It was quite a long time before the time of the date of the assignment, that Taylor first requested deponent to assign the bond and mortgage to the complainants. The complainants also applied to deponent to assign the bond and mortgage to them; that is to say, rather, to inquire about the said bond and mortgage; and deponent inferred that they expected to have the bond and mortgage. These advances and endorsements were made to J. O. Taylor; but none of them were made, as witness now recollects, for the purchase of goods; but of this witness cannot speak positively, not having the memoranda of his endorsements before him. Deponent thinks he could speak positively if he

had his books and papers before him.   Deponent believes he has been requested by both parties to bring his papers and books, and he meant to do so, and if he had not came off in a hurry, he should, and so forgot it.   Deponent has endorsed for J. O. Taylor, and *thinks* for J. O. Taylor & Co. ; but does not recollect whether before the assignment to him of said bond and mortgage, or after ; it may have been both.   Deponent thinks he advanced money on one of the notes referred to, of Agnew, Abbott & Co., and also on the other, but of the latter he is not sure. The last named advances was by check for the money.   Deponent keeps a check book.   I suppose that when I advanced the money I took the note.   Deponent thinks *one* of the notes passed through the hands of the complainants.

I recollect there was some paper drawn or endorsed by Andrew Agnew—which deponent said he thinks before said assignment to him—and after the dissolution of the firm of Agnew & Taylor.   The paper of Andrew Agnew, he thinks, was made for raising money ; and so far as deponent had any agency in raising money upon it, he found it difficult or almost impossible to do so ; and, as I understood, an exchange was somehow effected with Agnew, Abbott & Co. for their paper ; it being less difficult to raise money on their paper than paper drawn by Andrew Agnew. Andrew Agnew's paper was brought to me by Thomas J. Agnew ; I suppose for the purpose of discount, or for an advance, or for raising money on it.   I know not for what purpose, except from the statement of the party bringing it to him.   Deponent understood from him that it was to meet the paper of Agnew & Taylor.

Defendant's counsel here asked the following questions :

Was this paper of Andrew Agnew afterwards exchanged for paper of Agnew, Abbott & Co., of a like or similar amount, as far as your recollection goes ?

Witness says he so understood it.

*Question*—Do you or do you not recollect whether the bond and mortgage in question was presented to you as security or inducement to endorse, discount or negotiate the notes in question —that is to say, the notes of Andrew Agnew ?

Witness answers in the negative.

*Question*—Do you recollect of seeing the said bond and mortgage before the exchange referred to, of Andrew Agnew's notes for the notes of Agnew, Abbott & Co. ?

*Answer*—Without knowing the time of the exchange, I cannot answer.

*Question*—Suppose the exchange referred to took place between the 1st and 23d of April, 1844, did you or did you not see the said bond and mortgage before the 23d April, 1844—this last date being that of the assignment of the bond and mortgage?

Witness cannot tell.

*Question*—Did you ever try to negotiate the said bond and mortgage before you got the notes of Agnew, Abbott & Co. ?

*Answer*—I think not.

*Question*—When the notes of Agnew, "Abbott & Co. were presented to you, did or did not the bond and mortgage accompany them ?

*Answer*—I think not.

*Question*—How long was it after the notes of Agnew, Abbott & Co. were presented to you, were the said bond and mortgage presented to you ?

*Answer*—I have no distinct recollection—but perhaps ten or twelve days.

Deponent after going to his office, and after examining his memorandums, books, &c., further says, that he is satisfied that his advances were upon the notes of Agnew, Abbott & Co., and not upon the notes of Andrew Agnew. I have no evidence or recollection of the mortgage in question being in my possession previous to the date of the assignment to me.

My endorsements for J. O. Taylor, with the exception of some $500 or $600, occurred after the date of the assignment of the aforesaid mortgage to me. My endorsements for J. O. Taylor, or J. O. Taylor & Co., were mainly of business paper, given by him or them for the purchase of goods. These were among the liabilities to which I refer, when I said I declined to assign the bond and mortgage until I was relieved from all liabilities. I find on referring to my book, that I had endorsed J. O. Taylor or J. O. Taylor & Co.'s note for $2,000, which was outstanding whilst I held the said bond and mortgage, and which fell due on the 3d

and 6th of November; this note was endorsed by me for the purpose of enabling Taylor to raise money, as I understood. This note was surrendered to me, or my endorsement cancelled, before I assigned the bond and mortgage to the complainants. I do not know whether the two thousand dollar note has ever been in bank or not.

The deponent being further *examined in chief*, says :

I find, on referring to my check book, that I advanced to Agnew & Taylor, on the 4th of April, 1844, $700 ; on the 6th day of April, 1844, to T. J. Agnew, $1,500 ; and on the 8th of April, 1844, to T. J. Agnew, $700.   These advances were made upon the two notes of Agnew, Abbott & Co.   On the 6th day of April, 1844, I procured the note of Agnew, Abbott & Co., for $1,640, dated April 1st, 1844, at four months, to be discounted ; this note was endorsed by Andrew Agnew, J. Orville Taylor, and E. H. Kimball.

I subsequently, and before it came due, gave one of the said notes, namely the note for $1,560, to Mr. J. Orville Taylor, on receiving the amount of my advance.   The $1,640 note was paid at maturity ; Taylor paying one-half, and Abbott & Wilcomb, or Agnew, Abbott & Co. paying the other half.   The object of raising money on the notes of Agnew, Abbott & Co. and on the mortgage in question, was to meet the liabilities of Agnew & Taylor, which were maturing.   I understood this distinctly from both Agnew and Taylor.

Neither Thomas J. Agnew nor Andrew Agnew ever called upon me for the bond and mortgage in question before I assigned the same to the complainants, to my recollection.   Nor before the commencement of the controversy in relation to it.   He did, however, call upon me several times in relation to an after bond and mortgage on property in Monmouth county.

When I was called upon by the complainants in relation to the bond and mortgage, I stated my willingness to assign the same to whomsoever Mr. Taylor directed, as soon as my liabilities were paid.   The bond and mortgage was treated by me, Mr. Taylor and the complainants, as the property of Taylor.   I so

considered it, and so far as I know, the complainants had no reason to think otherwise.

Deponent, on being again *cross-examined*, says, that he has no recollection that the complainants, at the time he made the assignment to them of the bond and mortgage in question, requested him to make any inquiries of Andrew Agnew or T. J. Agnew in relation to the same. Nor did I make any inquiries of either of them at the time.

*James Wilcomb*, being duly sworn on the part of the complainants, deposeth and saith, that he was one of the firm of Agnew, Abbott & Co. in the spring of 1844; said firm commenced 1st of the preceding February. The defendant in this suit was a partner of the firm. The defendant, shortly after dissolution of the firm of Agnew & Taylor, became a partner of the firm of Agnew, Abbott & Co. The defendant brought from the old firm of Agnew & Taylor about $3,600 worth of goods, and put it into the firm of Agnew, Abbott & Co. The firm of Agnew, Abbott & Co. had possession of the two notes of Andrew Agnew, amounting to about $3,200, which have been spoken of by the other witnesses. They were brought there by the defendant. Agnew, Abbott & Co. then gave their two notes to Thomas J. Agnew, amounting to about $3,200. J. O. Taylor afterwards paid half of those notes, and Agnew, Abbott & Co. paid the other half, and the last half was charged to Thomas J. Agnew. At the time these notes were paid Andrew Agnew did not come for his notes, but did so some time in the fall afterwards of that year. He then got them. After the notes of Agnew, Abbott & Co. were paid off, they remained in the possession of witness until some time last summer or fall. Defendant then came and asked witness if he had the notes; witness said he had the notes, and would see if he could find them. Defendant then asked if they were of any use to deponent, who said they were not. He said he would take them, and I gave them up. He did not say that he wanted them. Deponent witnessed the execution of the bond hereinbefore mentioned, and saw the defendant sign it. It was done in the city of New York. Witness did not understand

at the execution of the bond, or at any other time, that the bond and mortgage had any connection with the two notes of Andrew Agnew, or with the two notes of Agnew, Abbott & Co. Does not recollect whether the two notes had any existence at the time of the execution of the said bond. The firm of Agnew, Abbott & Co. was dissolved in January, 1845. The business of Agnew, Abbott & Co. has not yet been settled and closed up. At the time witness gave up to Andrew Agnew his notes, he, Agnew, did not pay anything for them, nor did he at any other time.

Witness being *cross-examined* on the part of the defendant: The notes referred to, of Agnew, Abbott & Co., had no connection with the regular business of Agnew, Abbott & Co., and did not pass into the books of the firm.

*Examination in chief.* At the time the firm of Agnew, Abbott & Co. was formed, the defendant had charge of the old affairs of Agnew & Taylor. He continued in charge of them until some time in April following, when they passed into the hands of J. O. Taylor.

Being *cross-examined* again, says, that all he understood at the time of the execution of the said bond was, that Mr. Agnew expected to raise money on it upon his property in New Brunswick.

The following depositions were taken on behalf of the defendant:

*James L. Lecompt,* a witness produced on the part of the defendant, being duly sworn, on his oath deposeth and saith, that he resides, and has resided for the last ten or twelve years, in New York city—was in the employ of Agnew, Abbott & Co. of New York, when the concern was first formed in February, 1844, and continued with them up to 1845, as long as they continued in business together. Recollects attending a meeting at Howard's Hotel, in New York, at the room of the defendant, in relation to the affairs of the late firm of Agnew & Taylor. Re-

collects Mr. Taylor's taking charge of the affairs of Agnew &
Taylor. This meeting was held the night before Mr. Taylor's
taking charge of the affairs of Agnew & Taylor. There were
present at that meeting Mr. Taylor, the defendant, Andrew Ag-
new, and deponent. Deponent was there at the request of Mr.
Thomas J. Agnew, and a Mr. Abbott, of the firm of Agnew,
Abbott & Co. At that meeting the affairs of Agnew & Taylor
were the subject of discussion. It was then arranged that Ag-
new should give up the business, and that Taylor should take
charge of it for settlement. There had been a statement of the
affairs of Agnew & Taylor made out before that. There was no
charge or pretence by Mr, Taylor of the misapplication or waste
of the assets of Agnew & Taylor by Thomas J. Agnew. But
he did complain of a want of energy and exertion on the part of
Thomas J. Agnew. It was there stated ' that there were two
notes of Andrew Agnew which had been given for the purpose of
raising money for the firm of Agnew & Taylor, but they could
not be negotiated, or the money raised on them. These notes
were understood to be accommodation notes. It was proposed to
get two notes of Agnew, Abbott & Co., endorsed by Andrew Ag-
new, to raise money on for the benefit of Agnew & Taylor. De-
ponent understood that the first set of notes in that case was to
be given up, and the others to be used. Understood shortly af-
terwards that these latter notes were given. At this discussion
and arrangement, Mr. Taylor said that with this temporary ac-
commodation, and the assets of the firm, he could go on and pay
the debts. Does not recollect of Mr. Taylor saying or pretend-
ing that the assets were insufficient ; and deponent thinks that if
Mr. Taylor had said so he should recollect it. It was arranged
that these last mentioned notes should be taken up and paid out
of the assets of Agnew & Taylor, by Mr. Taylor. It was un-
derstood that Mr. Andrew Agnew was to be protected against
the payment of these notes, as being merely an accommodation
endorser. There had been some talk shortly before this meeting,
or proposition by Mr. Taylor, as I understood from Mr. Abbott,
to obtain notes from Agnew, Abbott & Co. After this proposi-
tion, and previous to the meeting before mentioned, deponent ad-
vised Thomas to secure his brother, in case he endorsed these

notes; and mentioned to him, that as he had some property in New Brunswick, perhaps he had better secure him by a bond and mortgage on that.  After it had been arranged at the said meeting that the said notes, in case they could be obtained, should be endorsed by Andrew Agnew, and that Agnew should be protected, it was then arranged between the deponent and defendant and Andrew Agnew, that he should be protected by a bond and mortgage upon his property in New Brunswick against his endorsement on these two notes.  After this arrangement, Andrew Agnew was perfectly satisfied; he was anxious to sustain the credit of both, as they had formed a new connection; and at the same time was nervous and timid.  Thinks that he, deponent, mentioned to Mr. Abbott the next day, that Mr. Agnew was to be secured by a mortgage for his endorsements.  Deponent was not present at the giving of the notes, nor at the execution of the bond and mortgage, but shortly afterwards understood in the concern, but not from Taylor, that such a transaction had taken place.  Deponent thinks that shortly before one of these notes became due, Mr. Taylor called at the store of Agnew, Abbott & Co. and had a conversation with Mr. Abbott, and after he left, Mr. Abbott said that he, Mr. Taylor, had called to say that he would not take up one of these before mentioned notes.  And it was in consequence of that that Mr. Abbott went up to New Brunswick to see Mr. Andrew Agnew in relation to it.  The next day after this meeting before mentioned, deponent knows that Mr. Taylor took charge of the business by his coming there with a young gentleman named Matthews, a clerk of Mr. Taylor, and taking the books and papers of Agnew & Taylor away with him, which previously had been in the custody and settlement of Mr. Thomas J. Agnew, partner of the firm of Agnew, Abbott & Co.

(Mr. Van Dyke, on the part of the complainants, excepted to the foregoing evidence, as being hearsay evidence, and as being the declarations of Mr. Taylor, to which his attention had not been called when he was himself examined, and as being variant from the defendant's answer.)

The witness then being *cross-examined,* says :

That the firm had been dissolved some two months or more previous to the meeting at Howard's Hotel.   During that time the affairs of Agnew & Taylor had been in the hands of the defendant for settlement.   He became embarrassed in the settlement of the affairs of Agnew & Taylor, and could not proceed any further to meet their engagements, without aid or accommodation, although up to that time all had been met.   At the meeting at Howard's Hotel, Mr. Taylor complained to Agnew of his inability, inattention, and want of energy, in the settlement of the affairs entrusted to him.   It was for this reason that the change took place, and Mr. Taylor said that with a temporary accommodation he could settle the affairs of Agnew & Taylor. This meeting took place some two or three months after the first February, 1844.   Does not know that the agreement between Agnew & Taylor upon that subject was reduced to writing.   Does not know how long before the meeting spoken of the two notes of Andrew Agnew first mentioned had been in existence :  but understood that they had been in existence some time, and that efforts had been made to negotiate them, which failed.   Had then had no conversation with Mr. Taylor for some eight or ten months ; there had been some difficulty between them, and they were not on speaking terms ; they have not spoken to each other since. The amount of the indebtednes, and the assets of the firm of Agnew & Taylor , were referred to, but doponent does not recollect the amount of either.

*Being re-examined in chief :*

Deponent says that before he went to this meeting Mr. Abbott had consulted him or asked his opinion about the affairs of Agnew & Taylor.   Was requested to attend the meeting with a message from Agnew, Abbott & Co.   Has never had any difficulty with the complainants in this suit ; has not any unfriendly feelings towards Mr. Taylor ; Mr. Taylor took the offence, not deponent.

*James Wilcomb,* a witness produced on the part of the defendant, being duly sworn deposeth and saith, that he resides in the

city of New York; that he was a partner of the late firm of Agnew, Abbott & Co.; that deponent wrote and signed the notes (marked *Exhibits* 1, and 2, on the part of the defendant); when these notes were given, the notes of Andrew Agnew before referred to were left with the firm of Agnew, Abbott & Co. as collateral security. These notes were made and given on the thirteenth April, 1844. He knows this fact from a memorandum in hiis own handwriting (marked *Exhibit* 3, on the part of the defendant.) These are the notes upon the payment of which the other notes given as collateral security were given up, with the memorandum, to Andrew Agnew. This memorandum (marked *Exhibit* 3,) was given either to Thomas J. Agnew or to Andrew Agnew, at the time of the making of the last mentioned notes.

The endorsements upon the last mentioned notes (marked *Exhibits* 1 and 2,) are admitted to be true.

*Robert E. Agnew,* a witness produced on the part of the defendant, being sworn, on his oath deposeth and saith: I am brother of the defendant, and brother-in-law of J. Orville Taylor. Have been engaged in mercantile business, and in the employ of the late firm of Agnew, Abbott & Co., of New York. I was with the said firm in the latter part of January or first of February, in the year 1844; I was in their employ some four or five months; I went with the said firm of Agnew, Abbott & Co. about ten days after they commenced business in New York. I recollect a meeting having been held at the Howard Hotel, in the city of New York, in relation to the business of Agnew and Taylor. It might have been the next day after this meeting, or within five days, that the said J. Orville Taylor took charge of business of the said Taylor & Agnew. I recollect of their shewing that Agnew, Abbott & Co. had given two notes to Andrew Agnew to be endorsed by him for the benefit of Agnew & Taylor. The said notes were given in amount in the neighborhood of $3,000. I recollect of a bond and mortgage having been given by Thomas J. Agnew to Andrew Agnew, for the sum of $4,000. I think the said bond and mortgage were given on the day following the meeting there referred to; it might have been two days after-

wards. The mortgage and bond were both drawn in the store of Agnew, Abbott & Co.; I saw and examined them. The bond and mortgage now shown witness are the same as given in said store. They are marked *Exhibits B* and *C* on the part of the complainants. · The mortgage, after it was drawn up, was taken before a commissioner. The bond and mortgage were completed on the day on which they were drawn up; and I think James Wilcomb, one of the firm of said Agnew, Abbott & Co., witnessed the said bond. Who J. D. Fay is, the witness to the said mortgage, this deponent does not know; there was no such person about the said store of Agnew, Abbott & Co. when the said bond and mortgage were drawn up. When the said mortgage was delivered by Thomas J. Agnew to Andrew Agnew there was no money paid. The bond and mortgage weae given to protect Andrew Agnew for his endorsements on the two notes above referred to, given by Agnew, Abbott & Co., which the said Andrew Agnew had endorsed. It might have been on the day when the bond and mortgage were given, or on the day after that, that J. Orville Taylor stated to me (Mr. Van Dyke excepted to the declarations of J. Orville Taylor to the said witness) that Thomas J. Agnew had given a bond and mortgage to Andrew Agnew, to protect him from the endorsements on the notes above referred to. He stated to me that Andrew Agnew had objected to endorsing the notes unless he was secured. I recollect of his also stating to me, that with the assets of the firm of Agnew & Taylor, and with the temporary loan, they, the said firm of Agnew & Taylor, would be able to get through. I know that one of the notes above referred to was protested for non-payment. I saw a copy of the notice of non-payment in the hands of Andrew Agnew, and I know that it was paid by Agnew, Abbott & Co. From the date of a power of attorney, which I took with me to Philadelphia, to transact some business, and which I hold in my hand, I am satisfied that the notes above referred to would not have been given before the twelfth of April, A. D., 1844.

*Being cross-examined,* the said witness saith, I recollect the fact of the dissolution of Taylor & Agnew as a firm.

I do not know that at the time they dissolved there was a

writing of dissolution with the terms prepared and signed. After the dissolution, Thomas J. Agnew first took in hand the affairs of said firm of Agnew & Taylor to settle. Never heard or knew that Andrew Agnew had given his two notes to Agnew & Taylor, or anybody else, for $3,000, or thereabouts, to aid in settling the affairs of the firm of Agnew & Taylor. I do not know whether the agreement to secure Andrew Agnew for endorsing the notes above referred to was made at Howard Hotel, or whether it was consummated on the day when the bond and mortgage was signed. I do not recollect that J. Orville Taylor was present at the arrangement when Thomas J. Agnew agreed with Andrew Agnew to give him the bond and mortgage referred to; but he was present when they were drawn up at the store of Agnew, Abbott, & Co. Does not know that at the time it was arranged that J. Orville Taylor was to take charge of the affairs of the firm of Agnew & Taylor, Thomas J. Agnew was to raise $4,000 to settle said affairs. Do not know that shortly after Andrew Agnew had the said bond and mortgage he assigned them to Elijah H. Kimball. I never knew until now that Andrew Agnew had assigned said bond and mortgage to Elijah H. Kimball. I do not know that Thomas J. Agnew brought any of the stock of the old firm of Agnew & Taylor into the new firm of Agnew, Abbott & Co.

*Witness being re-examined in chief* says, that at the time when the bond and mortgage were drawn up in the store of Agnew, Abbott & Co., J. Orville Taylor was not only present, but that he knew the object for which said bond and mortgage were given. I know he knew the object because he told me so at the time. He mentioned the object to me.

The cause was argued by *J. Van Dyke* for the complainants, and *R. Adrain* for the defendant.

THE CHANCELLOR. I have spent a good deal of time on this case, and it appears to me that it cannot be satisfactorily decided on the testimony now before the Court.

It should be made to appear what the amount of the assets of the late firm of Agnew & Taylor was; what the amount of their

debts; whether those debts were all paid, and by whom they were paid.

The complainants, from the information they received when they took the assignment of the bond and mortgage, should not, I think, be permitted to recover, unless they show that Taylor, by paying the debts of Agnew & Taylor, acquired an equitable interest in the bond and mortgage. The paper which was produced, purporting to be a copy of an agreement made between Agnew & Taylor, about the time when Taylor took charge of the affairs of said late firm of Agnew & Taylor, is an important paper, if it be a true copy. The original may be produced, or more satisfactory means taken to show what has become of it, and of showing its contents.

If the paper produced be a true copy, it would seem to show that T. J. Agnew was to furnish $4,000. He had taken of the goods of the firm $3,600, and carried them into a new firm of which he became a member, after the dissolution of the firm of Agnew & Taylor; and Taylor had taken $1,575 of the assets of that firm; but the same paper shows that the notes of Agnew, Abbott & Co., endorsed by Andrew Agnew, which T. J. Agnew procured, were to be considered as liabilities of Agnew & Taylor and paid as such by Taylor. But it appears that T. J. Agnew, when those notes became due paid half of them, that is, Agnew, Abbott & Co., the new firm into which T. J. Agnew went, paid half of them, and charged it to T. J. Agnew. It cannot be that T. J. Agnew was to pay those two notes, or half of them, in addition to furnishing $4,000, for he had taken but $3,600 of the assets.

The cause will stand over, with leave to the parties to take further testimony.

The following order to take further testimony was made by the Chancellor, and was filed on the 20th of March, 1848.

The above cause having been argued before the Chancellor on the pleadings, depositions, and Exhibits in the case, and the Chancellor having duly heard and considered the same, and not being satisfied upon such pleadings, depositions, and exhibits, to

make such decree in the cause as is prayed for by the complainants : It is ordered, adjudged, and decreed, that the said cause do stand over for further consideration, and that the parties be at liberty to take further and other testimony in the case, according to the law and practice of this Court, and to recall and re-examine the witnesses already examined in the case, if they think proper so to do, giving to each other the usual notices, and closing the testimony in the usual way.

Dated December Term, 1847.

The following depositions were taken on the part of the complainants, pursuant to the last mentioned order :

*Dorus W. Warren,* a witness produced on the part of the complainants, being duly sworn, deposeth and saith, that he resides in the city of New York, is a clerk in the store of A. Journeay & Co., in the dry goods business. On the 1st day of July, A. D. 1844, entered the store of J. Orville Taylor & Co.; he remained till the early part of February, 1845, in the capacity of book-keeper; during the whole time it was his business to take charge of the books of that firm; he credited all moneys received, and charged all moneys paid out. Witness produced books, which he deposes are the cash book, day book and Ledger, of J. Orville Taylor & Co.

Counsel for complainants put to witness the following questions :

Refer to the accounts of J. Orville Taylor & Co. with Agnew & Taylor? (Excepted to by defendant's solicitor.)

*Answer*—I have the accounts before me in the ledger, which are partly in my hand-writing.

*Question*—Are those accounts regularly transcribed into the ledger, from the day book and cash book of the firm? (Excepted to by defendant's solicitor.)

*Answer*—They are. A part of them are in witness's hand-writing, and the other part are in the hand writing of William Matthews, in the ledger. William Matthews was book-keeper for J. O. Taylor & Co. from April 1st to 1st of July, 1844;

3

being from the time the books were first opened until the time witness first went there.

*Question*—Have you ever examined the original entries in the day book and cash book, which are transcribed to the ledger, of the account of J. O. Taylor & Co. with Agnew & Taylor? (Excepted to.)

*Answer*—I have not examined *all* the items which form that account, but those from July 1st, 1844, to 1st January, 1845. The date of the last item in the ledger is December 31st, 1844; the date of the first item is April 30th, 1844. The witness being referred to the original entries in the cash book of J. O. Taylor & Co, in account with Agnew & Taylor, says that they are all in the hand-writing of William Matthews, to July 1st, 1844, and from that time in the hand-writing of witness, with the exception of four charges on the 2d July, 1844, which are in the hand-writing of Wm. Matthews. And the witness being referred to original entries in the day book, says that they also are in the hand-writing of Wm. Matthews to July 1st, 1844, and from that time they are in witness's hand-writing, with the exception of four charges on the 2d July, 1844, which are in the hand-writing of the said Wm. Matthews.

*Question*—What is the aggregate amount of debit in the ledger? (Excepted to.) The aggregate amount is $20,356.65 against Agnew & Taylor; the aggregate amount of credit is $9,597.19; the balance is $10,759.46. Have you examined and compared the original entries in the day book and cash book of the firm of J. O. Taylor & Co., with the items in their ledger, in their account with Agnew & Taylor, and do you find the same to be correct? (Excepted to.)

*Answer*—I have examined and compared them, and find them to be correct; from the 4th day of April, 1844, to the 2d July, 1844. This last examination I have made since I have been on the stand, the books being before me. Witness knows Thomas J. Agnew, has known him by sight from about the 1st July, 1844, up to the present time. Have had no conversation with him, but have answered questions when put to him by Thomas J. Agnew, in the store of J. O. Taylor & Co., such as whether Mr. Taylor was in.

*Question*—Do you know anything of a bond and mortgage given by Thomas J. Agnew to J. O. Taylor, for the purpose of raising $4,000, and if so, state what? He does; he has seen a mortgage which was given by Thomas J. Agnew for $4,000; for what purpose I do not know. His (witness's) first knowledge of it was in July, 1844, when J. O. Taylor attempted to negotiate it, or raise the money upon it. Saw it at Taylor & Co.'s store, can't say whether it was a bond and mortgage or whether it was a mortgage alone, but knows that it was a mortgage from Thomas J. Agnew to J. O. Taylor. Heard a conversation between Mr. Agnew and J. Orville Taylor, on one or two occasions, and Mr. Taylor spoke of this mortgage given by Mr. Agnew to Mr. Taylor. Mr. Taylor told him that the nature of his business would cause him to part with the mortgage, and wished to know whether Mr. Agnew or the family would have hard feelings if the property had to be sold on the mortgage. Mr. Agnew replied that for family feelings, if it was in Mr. Taylor's power to control the mortgage it would save the feelings of the family. Mr. Taylor told him it would be impossible for him to hold the mortgage; that he had parted with it; that the nature of his business was such that it was impossible for him to let that amount be still. Mr. Agnew said that he was sorry on account of the family that it had been used; he presumed Mr. Taylor had done the best he could in holding it; he, for his part, should make no objections; that Mr. Taylor nad paid large sums for the house of Agnew & Taylor, and that he was glad there was as much left to remunerate him. Mr. Agnew told Mr. Taylor that the mortgage was his, (J. O. Taylor's) and that he could use the mortgage as he saw fit. Mr. Agnew said he was sorry that the affairs of Agnew & Taylor had turned out so bad. There was nothing said about the bond and mortgage having been given to raise money for Agnew & Taylor. This conversation took place in the latter part of January, or in the early part of February, 1845; it was at the store of J. O. Taylor & Co.; Mr. Agnew had come into the store to borrow some money when this conversation took place. He told Mr. Taylor he was badly in want of money, and could raise none with the house in which he was concerned. Such conversations

sometimes took place when Mr. Agnew would call in to borrow money.

Do you remember the fact in any of these conversations of Thomas J. Agnew with J. O. Taylor—that Agnew offered to sell to Taylor his interest in the concern of Agnew, Abbott & Co. ?  (Objected to.)

*Answer*—I do.  Thomas J. Agnew did sell his interest in the firm of Agnew, Abbott & Co. to J. Orville Taylor, for the sum of $50 to $70.  Thinks that $70 was the sum.  Thinks that this was about the 1st of February, 1845, in the store of J. Orville Taylor & Co.  The conversation concerning the mortgage was raised in this interview, which conversation I have spoken of before.  Andrew Agnew never was present at any of these conversations.  Has paid a good many notes of the house of Agnew & Taylor, with the money of J. Orville Taylor & Co., while witness was in the employment of J. Orville Taylor & Co., as book-keeper before referred to.  I have not seen the books referred to by me as the books of Taylor & Co. since February, 1845, to the present time.  I remembered the balance of that account, and stated it to Mr. McCurdy.  (Examination adjourned to 3 o'clock P. M.)

*Examination resumed.*  The parties appeared.  Witness saw the mortgage to which he referred in his examination.  Witness being now shown a mortgage formerly marked *Exhibit C.* on the part of the complainants, says to the best of his knowledge, is the one spoken of in his examination.

Being *cross-examined*, the witness aforesaid says, that on the dissolution of Taylor & Co., Phelps & Cutter bought out the stock of Taylor & Co., and witness remained with them during the balance of the year, and then went with A. Journeay, Jr., and is there still.  Before he went with Taylor & Co., was with Colley & Lyman, in the city of Boston.  Lived in Boston probably three months.  Was in and out of Boston five months.  Before that, was at Ithaca, New York, for about twenty-five years ; was born and brought up there ; lived in Ithaca until he went to Boston.  First saw this mortgage a very short time after

the first of July, 1844; not more than fifteen or twenty days after the first of July, 1844. There was a broker in J. O. Taylor's store, at the time I first saw this mortgage, from whom Mr. Taylor wished to raise some money on it. Thomas J. Agnew was not there at the time. It laid in the bottom of the money box (that is, the mortgage,) at the store, among our bills receivable, and other papers of that kind; it might have been there until September, October or November of that same year; during the time, remembers seeing it a number of times.

*Question*—How long, to the best of your recollection, was this mortgage in that money box?

*Answer*—It was there from the time it was returned by the broker who was unable to negotiate it, until it was used by Mr. Taylor—with the exception that it was out a number of times for the purpose of being negotiated.

*Question*—Besides the broker to whom it was out to be negotiated, and who returned it, to whom else was it offered for negotiation?

*Answer*—I do not know.

*Question*—When was the last you saw it in that money drawer?

*Answer*—When it was turned over to McCurdy, Aldrich & Spencer.

*Question*—When was that?

To the best of my knowledge and belief it was in October or November—it might have been in September. During all this time it had not been used, to my knowledge.

*Question*—When you first saw it, who showed it to you?

*Answer*—When I first saw it, it was in the hands of this broker; when I was requested to go with him to see certain parties in regard to that mortgage.

*Question*—Where did it come from at this time?

*Answer*—I do not know. No one showed it to witness. When the broker got through with it, it was handed to me, and I was requested to put it in the money box; this was two or three days after; did not read it then, nor has witness ever read it.

*Question*—How do you know that it was a mortgage from Thomas J. Agnew to J. O. Taylor?

*Answer*—I cast my eye over it, but never read it.  If witness, without having seen this mortgage, had now been asked to swear to whom that mortgage was given, he would have sworn that Thomas J. Agnew gave it to J. Orville Taylor.  Is not now willing to swear that that is a mortgage from  Thomas J. Agnew to J. Orville Taylor.

*Question*—Has your attention been called to this mortgage, or has it been shown to you since your examination this morning, and before being placed upon the stand this afternoon.

*Answer*—The counsel for Mr. McCurdy asked me at dinner if I had ever seen the mortgage.  I told him that I had.  I have not seen it from the time it was passed to McCurdy until it was shown to me when on the stand this afternoon.

*Question*—Was the mortgage that you saw a mortgage to J. O. Taylor or to Andrew Agnew ?

*Answer*—My impression is that it was a mortgage to J. O. Taylor.

*Question*—Did you see the name of J. O. Taylor on it ?

*Answer*—Is not aware that he saw the name of J. O. Taylor upon it; but from the appearance of this mortgage, my impression is that this is the identical mortgage.   Does not know who was the subscribing witness to the mortgage, nor before whom it was acknowledged.   Does not know the date of it; does not know who it was signed by.

*Question*—What endorsement was on the back of it?

*Answer*—I do not know; nor do I know whether there was any.

*Question*—Was this mortgage by itself, or connected with any other papers ?

*Answer*—It was not tied up, but was folded up in a sheet of paper with other papers, consisting of protested notes belonging to Agnew & Taylor, of their customers, and insurance policies. Witness's impression is that he took this mortgage himself to Mr. McCurdy, as collateral security ; and he was in the habit of taking collateral securities there.

*Question*—When was this, that you took it there according to your said impressions ?

*Answer*—In September, October or November, 1844.   Has no

recollection of how long the mortgage was in that money-box; it might have been two, three, or four months; cannot speak definitely upon that point. Knows that it was passed to McCurdy, Aldrich & Co., as collateral security for the payment of the notes of J. O. Taylor & Co. to them. During all this time, Mr. Agnew had not been in the store to my knowledge, until after the mortgage had been passed to McCurdy, Aldrich & Co. Witness first heard of a suit between McCurdy, Aldrich & Co. and Thomas J. Agnew, last week. Mr. McCurdy came to the store and inquired of witness if Mr. Warren was in; and he then for the first time learned that there was a suit.

*Question*—Have you had any questions put to you by any person touching the matters in this suit, previous to your being placed on the stand to-day?

*Answer*—Nothing more than the questions which naturally arose in the conversation between Mr. McCurdy and myself, at the time before alluded to.

*Question*—Have you had any other conversation in relation to the matters in this suit, besides that one?

*Answer*—I had, yesterday morning, with Mr. McCurdy—with no one else. Questions were put to me by Mr. McCurdy, in that last conversation; which last conversation was in the store of A. Journeay & Co., and lasted probably about three minutes; the first conversation might have been half of an hour. Has never in any shape or way understood that he, witness, was to receive any compensation or benefit for giving testimony in this case, nor has he said so. No paper, or any writing of any shape or kind, has been shown to me by Mr. McCurdy, in any form, stating or setting forth what I was to prove, or expected to prove, or was necessary for me to prove. Thinks that these notes of Agnew & Taylor, before spoken of, became due and continued to be paid as late as November; should think that $6,000 of the notes of Anew & Taylor were paid by Taylor & Co. from the first of July till the latter part of November, 1844. Thomas J. Agnew and witness do not speak to each other when they meet; have never spoken to each other when they met. These conversations, of which witness speaks, might have been three or four times; they all probably came within fifteen days; these fifteen days were in

the latter part of January or first of February. At the time of these conversations, Thomas J. Agnew was in the firm of Agnew, Abbott & Co.; did not hear of the dissolution of the firm of Agnew, Abbott & Co. until after these conversations. When witness left the store of Taylor & Co. they might have owed witness $25, which he afterwards drew for, and was paid; they owed witness nothing else. After the firm of Taylor & Olcott dissolved, Mr. Taylor went to St. Louis, Missouri.

*Question*—Did you, after the dissolution of the firm of Taylor & Olcott, write or send a letter to J. O. Taylor, to St. Louis, or any other place, asking or demanding of him $500, or any sum, or otherwise you would expose or state the situation of the firm of Taylor & Olcott, and his conduct in relation thereto, or any letter or language of that or similar kind. (Objected to.)

Witness declined to answer, because he thinks that it will take entirely too long, and will bring up unpleasant feelings between Mr. Taylor and himself, and because it has no relation to this suit. Was never paid any hush money by Phelps & Cutters, or money for such purpose, or by any other person, in relation to that letter or any other subject. Was never paid $250 by Phelps & Cutters, or J. O. Taylor, or by his directions, in addition to his regular salary.

*Examination in chief, resumed :*

The notes given by Taylor & Co. for which the bond and mortgage were passed to McCurdy, Aldrich & Spencer, as collateral security, were given for goods and merchandise sold and delivered by McCurdy, Aldrich & Spencer to Taylor & Co. Have no doubt but that the mortgage shown to him here, formerly marked *Exhibit C.,* is the same mortgage witness saw in the store of Taylor & Co., and of which he has before spoken; it is the same mortgage which was passed over to McCurdy, Aldrich & Spencer, and concerning which the conversations by Thomas J. Agnew, before referred to, took place. Mr. McCurdy, in his conversations with me, merely asked me what I knew about the matters in this suit, and never suggested what he wished to have proved. Never spoke to Thomas J. Agnew, because he had no personal acquaintance with him; and not because he had any

bad feelings towards him.	Mr. Taylor, before he went to St.
Louis, went into a store in New York, where he stayed about five
or six weeks after the dissolution.

*April* 8, 1848.	John Orville Taylor, a witness produced on
the part of the complainants, being duly sworn, doth depose and
say—(Objected to on the ground of interest and his having been
already examined,) that he was formerly one of the persons who
composed the firm of Agnew & Taylor, which firm was composed
of John O. Taylor and Thomas J. Agnew.	They did business
in Nassau street, New York city, in the year 1843.	That firm
dissolved about the last of December, 1843.	The firm com-
menced the 1st of February, 1843.	There were no written ar-
ticles of co-partnership.	The assets of that firm, so far as they
were collectable, were applied to pay the debts of Agnew & Tay-
lor, except that part of them which were in witness's opinion
misapplied by Thomas J. Agnew.

*Question*—Upon the dissolution of that firm, who took the
stock of goods of that firm?

*Answer*—They remained with the other assets, in the hands of
Thomas J. Agnew.	The value of the stock of goods of that firm
upon its dissolution was about $3,700.

*Question*—Can you form any estimate of the notes and debts
due the firm at the time of the dissolution?

*Answer*—They could not have been far from $32,000, nomin-
ally valued.	Upon the dissolution of that firm, witness took about
$1,575 of the bills receivable.	The amount originally invested
by witness was more than that.	At the time of the dissolution of
that firm there was a written agreement between the parties,
regulating the application of the assets.	That written agree-
ment was subsequently destroyed or lost.	There was a subse-
quent agreement in relation to the assets, but witness does not
recollect whether it was reduced to writing or not.	That agree-
ment was made in April, 1844.	A copy of an agreement being
shown me, I recognise it as the one made at that time between
Thomas J. Agnew and witness.	The witness now remembers
that the original agreement was in writing.

*Question*—Who took possession of that original agreement at the time it was made?

*Answer*—Thomas J. Agnew. Does not know where it is now. (Counsel for the complainants called upon the solicitor of the defendant to produce the original agreement above referred to. The solicitor of the defendant replied, that he has not got it, and knows nothing about it.) The witness being shown a paper formerly marked *Exhibit D.* on the part of the complainants, says that he believes that it is a true copy of the original agreement above referred to, made between witness and Thomas J. Agnew. After entering into that agreement, witness, in accordance therewith, took upon himself the payment of the debts of Agnew & Taylor.

*Question*—At the time of that agreement, what was the amount of the debts of Agnew & Taylor, to the best of your recollection?

*Answer*—About $20,000.

*Question*—What was the nominal amount of the assets at the time of the agreement, to the best of your recollection?

*Answer*—About $18,000. Those assets consisted of bills receivable and book accounts. Has realized from those assets between $9,000 and $10,000. The remaining assets are worthless, witness thinks. The remaining assets are book accounts and bills receivable. Witness's definite means by which he arrived at these amounts are the books of Taylor & Co. The same books which have been spoken of by Mr. Warren.

*Question*—Were all the moneys obtained by means of the assets of Agnew & Taylor, which he received from Thomas J. Agnew at the time he took charge of the business, used by witness in paying the debts of Agnew & Taylor?

*Answer*—As the avails of these assets were obtained, they were placed to the credit of Agnew & Taylor on the books of John O. Taylor & Co., and as the bills payable of Agnew & Taylor matured, funds from the firm of J. O. Taylor & Co. were used to pay them, to the amount of more than was received from the said assets of Agnew & Taylor. About $7,000 more than was received from the assets of Agnew & Taylor.

*Question*—Whether in the assets derived from Agnew & Tay-

lor, over and above which witness paid the sum of $7,000 in payment of their debts, he included the $4,000 derived from the bond and mortgage?

*Answer*—I do.

*Question*—Did you pay $7,000 of the debts of Agnew & Taylor, besides the proceeds which you derived from the assets of Agnew & Taylor and the bond and mortgage before referred to?

*Answer*—I did. All the debts of Agnew & Taylor are paid.

*Question*—Who paid those debts?

*Answer*—Thomas J. Agnew and myself.

*Question*—Subsequently to the agreement between you and Agnew last before referred to, who paid the debts of Agnew & Taylor?

*Answer*—I did. Witness paid all of the debts which were due or became due subsequently to that agreement. Some of the notes, when matured, were extended ninety days, and some six months, and paid by witness on their maturity. Does not know what has become of the books of Agnew & Taylor. The last he saw of them they were in the safe of the store 59 Cedar st., New York, which was in February, 1845. Has not seen them since that time. Has searched for them, and not been able to find them. Recollects that there were several meetings between himself and Thomas J. Agnew at Howard's Hotel, in New York, in relation to the affairs of Agnew & Taylor, but remembers no meeting in particular.

*Question*—For what purpose were the bond and mortgage in question in this suit given by Thomas J. Agnew? (Objected to.)

*Answer*—To pay the indebtedness of Agnew & Taylor, provided the other assets failed to do so. Has frequently, since the giving of that bond and mortgage, heard Thomas J. Agnew say, that they were given to pay the debts of Agnew & Taylor.

*Question*—Have you or have you not ever said to any person, that the bond and mortgage in question were given to secure Andrew Agnew?

*Answer*—I have not. Has used all possible diligence and attention to collect the assets of Agnew & Taylor; witness, as far as he knows, thinks the remaining assets are worthless, but can-

not tell what they may become worth. Subsequently to July, 1844, Thomas J. Agnew occasionally came to witness's store, to borrow money. Often apprised Thomas J. Agnew that there was a large deficiency of available means from the assets to pay the debts of Agnew & Taylor; often told Thomas J. Agnew that witness must part with the bond and mortgage, or sell it, or place it as collateral security for the purpose of obtaining goods to raise money to pay the debts of Agnew & · Taylor. Thomas J. Agnew gave his full consent to that. This was after witness saw there was a deficiency in the assets to pay the debts of Agnew & Taylor.

*Question*—During the summer of 1844, and before the bond and mortgage were assigned to the complainants, were they not frequently taken out of the possession of Mr. Kimball by you, for the purpose of negotiating them or selling them?

*Answer*—As far as my memory serves me, the bond and mortgage remained with Kimball, but not under his control, but under mine; and I tried to negotiate them frequently during the time. Does not know that he ever showed the bond and mortgage to the persons who spoke to him about negotiating it, or that they ever asked to see it. He may have had it in his hands, but does not remember; he had access to it at all times.

*Question*—By hands, do you mean in your possession?

*Answer*—I do..

*Question*—Do you or do you not remember a sale being made to you by Thomas J. Agnew of his interest in the firm of Agnew, Abbott & Co., and if so, when?

*Answer*—Some time in January, 1845, Mr. Agnew came to me in my own store, and said that an execution would sell to the amount of $70 of his interest in the firm of Agnew, Abbott & Co., and wished me to let him have the money to satisfy that execution, and prevent such sale; I did so, he giving me a paper conveying to me his interest in the firm of Agnew, Abbott & Co., as security for the payment of that money. That instrument was given up to Abbott & Wilcomb, members of the firm of Agnew, Abbott & Co., by witness, for the consideration of $70, paid by Abbott.

*Question*—By the words " given up," do you or do you not mean, that the instrument was assigned ?   (Objected to.)

*Answer*—I mean that I sold it to them, but whether I endorsed it or had it assigned, I cannot remember.

*Question*—At the time you sold it had you full power and authority to sell it ?

*Answer*—I thought I had, to the full amount of money that I paid for it.

*Question*—What did Thomas J. Agnew do with the goods which he took npon the dissolution of the firm of Agnew & Taylor?

*Answer*—I understood that he placed them as part of his capital in the firm of Agnew, Abbott & Co.   At the time of or at any time after the last agreement none of these goods came into witness's possession.

*Witness being cross-examined, says :*

*Question*—In your examination in chief, you say that the original agreement was destroyed or lost, which was it, destroyed or lost.

*Answer*—I do not know what became of it; I cannot say whether it was destroyed or lost.

*Question*—Do you know of your own knowledge whether it was destroyed or lost ?

*Answer*—I do not know what has become of it, but suppose that it is either destroyed or lost.   Has made no search for it, excepting among his, (witness's) own papers.   Did not make any search for the second agreement which he had spoken of ; thinks that Mr. Kimball took and kept the second agreement, but witness has no distinct recollection about the matter.   Witness thinks that in his former examination he swore that the debts of Agnew & Taylor were mostly paid in April, May and June, 1844, as they fell due, with the exception of $1,500 which were extended.

*Question*—How much do you say you paid of the debts of Agnew & Taylor, beyond the sums of money collected from the assets of that firm, and exclusive of the bond and mortgage ?

*Answer*—$11,000; inclusive of the bond and mortgage, $7,000.

*Question*—Have you ever said that Andrew Agnew was connected with or had any interest in this bond and mortgage?

*Answer*—I do not understand the question. In witness's examination in chief, he does not remember whether he said that the remaining assets of Agnew & Taylor, at the dissolution of Taylor & Olcott, were worthless?

*Question*—Did you in your former examination swear, either in substance or in words, that the bond and mortgage in question were given by you to Mr. Kimball, and remained in his hands or possession until they were assigned to the complainants?

*Answer*—I did. On the dissolution of Taylor & Olcott, they made no assignment, but they sold out their stock of goods to Cutters & Phelps. Mr. Olcott remained in the city for about three months, and then went to St. Louis—witness remained in New York some two months after the failure, and then went to St. Louis.

*Question*—Were the books of Taylor & Olcott pledged to any one?

*Answer*—They were placed by Mr. Olcott in the hands of a lawyer, for a certain time, before he (Mr. Olcott) went to St. Louis. Does not know how long they remained with the lawyer; they have not been in witness's possession since, until now his father owns and has control of them; asked permission that they might be here; they were sent; witness did not bring them. The search made by witness for the books of Agnew & Taylor was made on the 5th of this month, and since he came down the river to be a witness. Did not know that at the time of the dissolution of Taylor & Olcott the firm was indebted to any of the clerks in any amount.

*Question*—Did you, while in St. Louis, after the dissolution of the firm of Taylor & Olcott, receive a letter from Dorus W. Warren, asking or demanding of you $500, or any sum, or otherwise he would expose or state the situation of the firm of Taylor & Olcott, and your conduct in relation thereto, or any letter or language of that or similar kind?

*Answer*—While in St. Louis, I received a letter from Dorus W. Warren, stating that the writer had purchased a note against J. O. Taylor & Co. for $500, and unless I paid it he would give me trouble; that is about the whole of it; there was very abusive language in the said letter, showing a very singular way of expressing his gratitude for all the favors done him; that is the purport of the letter so far as I can remember; the letter was given to Mr. T. Cutter, and I have of late surmised that he dictated it; I supposed that the intention of the writer of that letter was to extort $500, by stating that he possessed information which he could reveal to my injury; does not remember whether there were any threats; he wrote that unless witness paid the note, which he alleged he possessed, he, the writer possessed information which he could or would reveal to witness's injury. That information was relative to the affairs of Taylor & Olcott; can't say whether he had such a note; witness never saw the note. Wm. T. Cutter, my being in his hands, compelled witness to pay Dorus W. Warren $250. Does not remember of having in my former examination said, that I mentioned to Thomas J. Agnew the assignment of the said bond and mortgage; witness thinks that he has, before the commencement of this suit, mentioned it to Thomas J. Agnew. Has no recollection of any such conversation as that referred to by Mr. Warren taking place in the presence of any person.

*Examination in chief resumed.*

Mr. Warren might have been in the store, and have heard what took place between Mr. Agnew and myself.

There were similar conversations as referred to by Mr. Warren, between myself and Agnew, occurring accidentally wherever the parties might meet in the street, at the store, and at the boarding-house. He, Warren, might have been present at such conversations without my remembering it, though I think it rather improbable, for such conversations were delicate matters.

*Question*—Mr. Taylor, refer to the books of Taylor & Co., and to their account with Agnew & Taylor. (Objected to.)

Witness replies, " I have the books before me."

*Question*—From these books, how much money was paid for

Agnew & Taylor by Taylor & Co., after the 1st July, 1844. (Objected to.)

*Answer*—$5,848. Witness declined to answer the question whether he had ever said that Andrew Agnew had any interest in the mortgage in question, because he did not understand the question. That mortgage was drawn payable to Andrew Agnew. I never made any inquiry for the books of Agnew & Taylor before the 5th of this month.

*Question*—Have you made diligent search for the books?

*Answer*—I searched for them on Wednesday. I made diligent search.

*Question*—Did you search and inquire at every place for those books where you thought there was any probability of finding them?

*Answer*—I did, and was not able to find them. The witness does know that Cutter paid the $250 to Mr. Warren, of which he has spoken. Witness has surmised, of late, that this letter of Mr. Warren might have been dictated by Mr. Cutter. William T. Cutter owed witness, and when he paid him, compelled witness to leave $250, which latter said he must pay to Mr. Warren. The second agreement was, I suppose, kept by Mr. Kimball. The first one was handed to Mr. Agnew. The one kept by Mr. Kimball has, I suppose, been either destroyed or lost.

*Question*—Do you not remember, on reflection, that the original agreement, last made, of which the paper now shown to you, of which *Exhibit D* purports to be a copy, was taken by Thomas J. Agnew, when he furnished you with the bond and mortgage for the purpose of raising $4,000?

*Answer*—I remember the original agreement of which this is a copy, and I presume of course that it was handed to Mr. Agnew. There were two agreements, one at the dissolution of Agnew & Taylor, and one when the assets came into my hands. The first I presume was lost; the second, as a matter of course I presume, was handed to Thomas J. Agnew when the mortgage came into your hands.

*Question*—Have you not confounded these two agreements in your previous examinations?

*Answer*—I don't think I have, but those who ask the questions have, and hence there has been a misunderstanding.

*Question*—Do you remember in whose hand-writing the paper marked *Exhibit D* is?

*Answer*—I do not know.

Here *Exhibit B 2* was offered on the part of the complainants.

*Exhibit A on the part of the Complainants.*—Whereas John Orville Taylor, of the county of Saratoga, in the State of New York, is justly indebted to Robert H. McCurdy, Herman D. Aldrich, and William Spencer, partners, trading under the name and firm of McCurdy, Aldrich & Spencer, of the city of New York, in the sum of $5,000 and upwards, for goods sold and delivered by the said firm to the said John Orville Taylor, ; and for the payment of which said sum of $5,000 and upwards, the said McCurdy, Aldrich & Spencer hold certain collateral securities, transferred and given to them by and through the said John Orville Taylor; among which collateral securities are a bond and mortgage given by Thomas J. Agnew to Andrew Agnew, and by him assigned and transferred to Elijah H. Kimball, and by the said Elijah assigned and transferred to the said McCurdy, Aldrich & Spencer, for the sum of $4,000, dated the 16th day of April, A. D. 1844, and payable, with interest, on the 1st day of May, A. D. 1845; and on which bond and mortgage there is due this day, for principal and interest, the sum of $4,663.33.   Now this writing witnesseth, that the said McCurdy, Aldrich & Spencer, in consideration of the premises above mentioned, and in consideration of the sum of $1 to them in hand paid by the said Taylor, have and do hereby release, exonerate and discharge the said John Orville Taylor, of and from the sum of $4663.33, being part of the sum due them from him as aforesaid, for the goods sold him as aforesaid by them, and being the same sum which is now due on the said bond and mortgage.   It being the intention of the said McCurdy, Aldrich & Spencer hereby entirely and unconditionally to release and discharge the said John Orville Taylor from the said indebtedness, for the goods sold as aforesaid, to the amount due on the

4

said bond and mortgage, whether the said bond and mortgage can be collected or not.

McCURDY, ALDGICH & SPENCER.

Signed in the presence of ⟩
   JOHN VAN DYKE.  ⟨

*Exhibit B on the part of the Complainants.*—KNOW ALL MEN BY THESE PRESENTS, That I, Thomas J. Agnew. of the city of New York, in the State of New York, am held and firmly bound unto Andrew Agnew, of the city of New Brunswick, and State of New Jersey, in the sum of $8,000, legal money of the United States, well and truly to be paid to the said Andrew Agnew, or to his certain attorney, executors, administrators or assigns, to which payment well and truly to be made, I bind myself, my heirs, executors and administrators, firmly by these presents. Sealed with my seal, dated the 16th day of April, in the year of our Lord 1844.

The condition of this obligation is such, That if the above bounden Thomas J. Agnew, his heirs, executors, administrators, or any of them, shall and do well and truly pay, or cause to be paid unto the above named Andrew Agnew, or his certain attorney, executors, administrators or assigns, the just and full sum of $4,000 money aforesaid at six per cent., on or before the 1st day of May 1845, then the above obligation to be void, and of none effect, or else to be and remain in full force and virtue.

THOMAS J. AGNEW. [SEAL.]

Signed, sealed and delivered in the presence of
   JAMES WILCOMB.

The bond and mortgage set forth in the bill were exhibited, on the part of the complainants.

*Exhibit D on the part of the Complainants.*—This agreement entered into this 13th day of April, 1844, between Thomas J. Agnew and J. Orville Taylor, late of the firm of Agnew & Taylor, witnesseth : that Thomas J. Agnew doth hereby agree that J. Orville Taylor shall settle up the business of the late firm. And that the said Agnew will and hath transferred the books

and accounts, and all the notes due to the late firm, to the said Taylor for aforesaid use, and will also provide the sum of $4,000 in addition, for the aforesaid use.

And the said J. Orville Taylor on his part, doth agree that he will settle the business, and will furnish the sum of $,1575 in addition to the aforesaid accounts and notes and money provided by said Agnew for said use; and will bring the business to a close as soon as can conveniently be done; and whereas Andrew Agnew hath signed two notes, in amount $3,200 to Agnew, Abbott & Co., to secure two notes of the same amount, drawn by Agnew, Abbott & Co. for the use of Agnew & Taylor.

Now this agreement further witnesseth, that the aforesaid two notes shall be considered a liability of Agnew & Taylor, and shall be paid from and out of the receipts of Agnew & Taylor, and that they will save the said Andrew Agnew harmless, and will not look to him for payment of the same, or any part thereof.

And it is further agreed between the parties that nothing herein contained shall be understood to affix any liabilities on the said J. Orville Taylor, individually, beyond the amount of receivables above specified, and belonging to late firm of Agnew & Taylor, or on Thomas J. Agnew individually.

In witness whereof we have hereto set our hands the day and year above mentioned.

THOMAS J. AGNEW.<br>J. ORVILLE TAYLOR.

The assignment, dated April 23d, 1844, of the bond and mortgage set forth in the bill by Andrew Agnew to Elijah H. Kimball, and the assignment of the same by Kimball to the complainants, for the consideration expressed of $1, dated September 24th, 1844, were exhibited on the part of the complainants.

*Exhibit No. 1, for Defendant.*

$1640.                          NEW YORK, April 1, 1844.

Four months after date we promise to pay to the order of Andrew Agnew, sixteen hundred and forty dollars. Value Received.

No. ——                          AGNEW, ABBOTT & Co.

Due August 4th.                  37 Nassau st.-

Endorsed—Andw. Agnew, New Brunswick, N. J.

       J. Orville Taylor.

       Elijah H. Kimball—(name erased.)

<em>Exhibit No. 2, for Defendant.</em>

$1560.                   NEW YORK, April 4, 1844.

. Three months after date we promise to pay to the order of Andrew Agnew, fifteen hundred and sixty dollars. Value Received.

No. ——          AGNEW, ABBOTT CO.

Due July 7.                  37 Nassau st.

Endorsed—Andw. Agnew, New Brunswick, N. J.

       J. Orville Taylor.

       McCurdy, Aldrich & Spencer.

<em>Exhibit No. 3, for Defendant.</em>

Gave my notes of the following dates and amounts to Agnew, Abbott & Co.

| | |
|---|---|
| April 1, at 4 months, for | $1,640 |
| April 4, at 3 " " | 1,560 |
| | $3,200 |

The above notes are to meet the two notes of the same date and amount, given by Agnew, Abbott & Co., in the order of Mr. Andrew Agnew.

AGNEW, ABBOTT & CO.

NEW YORK, April 13, 1844.

The cause was argued by *J. Van Dyke* for the complainants, and *R. Adrain* for the defendant.

THE CHANCELLOR. A partnership composed of Thomas J. Agnew and J. O. Taylor, in the city of New York, was dissolved in January, 1844. T. J. Agnew first took the assets, to settle the affairs of said late firm. He put into a new firm, of Agnew,

Abbott & Co., of which he became a member, $3,600 worth of the goods of said late firm of Agnew & Taylor.  T. J. Agnew met the engagements of the said late firm of Agnew & Taylor as long as the settlement of their affairs remained in his hands. After a few months, it was agreed between T. J. Agnew and Taylor, that Taylor should take the assets and go on with the settlement of the affairs of Agnew & Taylor.  At or about the time of this change, two accommodation notes made by Andrew Agnew, a brother of said T. J. Agnew, and endorsed by Agnew, Abbott & Co., were obtained, one dated April 1, 1844, for $1,640, at four months, the other dated April 4, 1844, for $1,560, at three months, for the purpose of raising money to meet engagements of Agnew & Taylor.  The money could not be raised on these notes, though efforts were made to do so. Afterwards, notes bearing the same dates and for the same amounts, and payable at the same times, made by Agnew, Abbott & Co., payable to and endorsed by Andrew Agnew, were procured, to be used instead of the said two first notes, for the same purpose.  A bond and mortgage from T. J. Agnew to Andrew Agnew was made, on the 16th of April, 1844, without any consideration, for the purpose of raising or aiding in the raising of money to meet the engagements of said Agnew & Taylor, or for the purpose of protecting Andrew Agnew against his said endorsements; the precise purpose for which the bond and mortgage were made, that is, whether for the sole purpose of protecting Andrew Agnew against his said endorsements, or for the purpose of raising money on them as securities having no connection with the said endorsements is in dispute.

The two notes endorsed by Andrew Agnew and the bond and mortgage went into the hands of E. H. Kimball, a lawyer, and, as it would seem, a kind of broker, in Wall street, New York, for the purpose of raising money on them, to be applied to the payment of debts of Agnew & Taylor.  The bond and mortgage were assigned by Andrew Agnew to Kimball, without any consideration therefor, and for the more convenient transferring them, as Kimball says, to any purchaser of them or lender of money on them; Andrew Agnew not residing in New York. Money was advanced by Kimball or raised by him on the said

two notes endorsed by Andrew Agnew. No money was raised on the bond and mortgage, as separate securities disconnected with the notes of Andrew Agnew, except that Kimball says, that while the bond and mortgage were in his hands he let Taylor have money on the faith of other securities and the said bond and mortgage.

After the dissolution of Agnew & Taylor, Taylor went into partnership with a Mr. Olcott, under the name of J. O. Taylor & Co., and this firm became indebted to the complainants for goods sold by the complainants to them, for which they gave their notes to the complainants. The notes of Agnew, Abbott & Co., endorsed by Andrew Agnew, were paid at maturity, or within a few days thereafter; being paid half by Taylor, and half by Thomas J. Agnew, or by Agnew, Abbott & Co., and charged by that firm to T. J. Agnew, who was a member of it. They are exhibited on the part of the defendant. One of them is endorsed by Kimball; the name is now erased; and the other is endorsed by the complainants.

On the 24th of September, 1844, the bond and mortgage were assigned by Kimball, without any consideration, to the complainants. Kimball says he made the assignment by the direction of Taylor; and the complainants claim to hold them as securities for goods sold by them, before and after the assignment, to J. O. Taylor & Co.

Before the complainants took the assignment of the bond and mortgage, they called on Kimball, and he stated to them that, as soon as the liabilities incurred by him and his advances had been paid, he would assign the bond and mortgage to whoever Taylor should direct. And, in answer to an Interrogatory exhibited by the defendant to the complainants, the complainants say, that when Taylor offered to have the bond and mortgage assigned to them, by Kimball, he said to them that the bond and mortgage belonged to him, and had been given by the defendant indirectly to him, to enable him to pay off and satisfy certain debts of said late firm of Agnew & Taylor; and that he had used said bond and mortgage and caused them to be transferred to Kimball as security for money which he, Kimball, had advanced to him, Taylor, and which he, Taylor, had used to pay the debts of Ag-

new & Taylor; and that he had repaid Kimball the money so advanced by him, and that Kimball would at his request assign the bond and mortgage to the complainants; and Kimball says that he and Taylor and the complainants treated the bond and mortgage as belonging to Taylor. The complainants made no inquiry, either of the mortgagor or mortgagee, to ascertain for what purpose they were given, or whether there was any money due on them, or whether Taylor had a right to direct the assignment of them. Taylor & Co. are insolvent.

I have said that it is a matter in dispute, whether the bond and mortgage were given for the specific purpose of protecting Andrew Agnew against his endorsements of said two last notes, or for the general purpose of raising money to meet the engagements of Agnew & Taylor. I am of opinion that the weight of testimony is that they were given for the specific purpose above mentioned; and I think the bond and mortgage were put into Kimball's hands, with an assignment to him thereon, as an aid or inducement in raising the money on the notes. It is certain that he paid no money for them and raised no money on them as separate securities. If this be so, then, after those notes were paid, the purpose for which the bond and mortgage were given was accomplished, and Kimball had no right to assign them, nor Taylor to direct the assignment of them; and the complainants acquired no interest in them.

If we suppose the bond and mortgage to have had no connection with the notes endorsed by Andrew Agnew, the case would stand thus: A bond and mortgage were made by Thomas J. Agnew to Andrew Agnew, without any consideration paid by Andrew; were assigned by Andrew to Kimball, without any consideration paid by him, in order that he might raise money thereon for the purposes of the late firm of Agnew & Taylor; no money was raised on them; they were assigned by Kimball to the complainants, at the request of Taylor, as security for goods sold by them to Taylor & Olcott, persons not appearing by the bond and mortgage to have any connection with them; without any inquiry of the mortgagor or of the mortgagee, who assigned them to Kimball; and after receiving the information before stated, in reference to the bond and mortgage and the ob-

ject for which they were given. That information apprised them that Kimball only held them or claimed to hold them for certain liabilities which he claimed to have incurred or for advances made to Taylor. These liabilities or advances were paid to him ; and when Kimball consented to make the assignment the complainants were apprised of that fact ; because Kimball refused to make the assignment till his liabilities or advances were paid. They knew, therefore, that when K. became willing to make the assignment he had no right existing in him to do it. The complainants and Kimball, upon the representations of Taylor, treated the bond and mortgage as Taylor's ; and they were assigned by the direction of Taylor. They took a bond and mortgage made by Thomas J. Agnew to Andrew Agnew, and by Andrew Agnew assigned to Kimball, on the ground that Taylor, a man who did not appear by the papers to have any interest or control over them, claimed a right to them and to direct to whom Kimball should assign them as security for goods sold by the complainants to Taylor & Olcott. The complainants, therefore, knew they could acquire no right to them unless they belonged to Taylor or he had a right to direct the assignment of them for such a purpose. The case, then, turns on the question whether Taylor had such right ; and the burden is on the complainants, in this state of the proofs.

But the proof before the Court does not show that the bond and mortgage belonged to Taylor, or that he had any right to direct them to be assigned to the complainants. If the assets of Agnew & Taylor were insufficient to pay the debts of that firm, and Taylor had paid from his own funds debts of that firm to an amount sufficient to make T. J. Agnew his debtor to the amount of the bond and mortgage, it might be that he could be considered as having an equitable interest in the bond and mortgage justifying him in appropriating them to the payment of his own debts ; but it does not appear that any such state of things existed ; and the proper parties are not before the Court to enable the Court to determine whether such a state of things existed.

The new testimony does not alter the case, if Taylor was a competent witness at all, and if he was properly examined a second time, neither of which am I prepared to say. The only

ground on which the complainants can stand is a possible equity which the Court might be willing to accord to Taylor if, on a settlement of the accounts of Agnew & Taylor, it should appear that Taylor had applied all the assets of that firm to the payment of their debts, and that, after exhausting them, he had paid out of his own funds moneys in discharge of the debts of said firm, for the half of which T. J. Agnew would be equitably bound to him.   In such a case the Court might, perhaps, be disposed to permit him to hold the mortgage as a subsisting instrument, as a security for the half of the moneys he had paid out of his own funds, after exhausting the assets of the said firm, in payment of their debts.   But it is evident that the accounts of that firm, and the ascertainment of the assets of that firm, and whether they were all exhausted, and how much indebtedness of that firm existed after their assets should be fully applied in payment of the debts, so as to ascertain the amount for which Taylor, or the complainants as entitled to the same equity that he would be entitled to, should be permitted to recover on this bond and mortgage, as the half of the deficiency of the assets of Agnew & Taylor, cannot be gone into and settled in this suit and between these parties only.

It would be strange indeed, if those accounts could be settled in this side way, in a suit to which Taylor is not a party, and upon an affidavit of Taylor as a witness for the persons (the complainants) to whom he undertook to transfer the mortgage as collateral security for the notes of Taylor & Olcott, given for goods bought by them of the complainants.   The decree must be for the defendants.

Decree for defendants.